# M. D. BROWN and J. H. RIMMER v. WABASH RAILWAY COMPANY, Appellant.

## Division One, July 1, 1925.

APPELLATE JURISDICTION: Injury to Stock in Shipment: Suit Against Initial Carrier: Judgment in Replevin in Favor of Connecting Carrier: Res Adjudicata: Full Faith and Credit. Plaintiffs sue the defendant for damages to live stock delivered for shipment to a point in Mississippi. The defendant was the initial carrier, and the last connecting carrier was the Illinois Central, which refused to deliver the stock upon the arrival at their destination in Mississippi, because plaintiffs refused to pay the freight charges, and thereupon plaintiffs sued the Illinois Central in replevin and for damages in the Mississippi court, which suit resulted in a verdict and judgment in favor of said defendant. In the trial of the instant suit the court refused to admit in evidence said judgment, the objection thereto being that this defendant was not a party to the Mississippi action. A verdict for one thousand dollars was returned and judgment for that amount in favor of plaintiffs was rendered. The validity of the Mississippi judgment is in no wise questioned, but defendant contends that said judgment was *res adjudicata* of plaintiffs' claim in this suit, and that the ruling of the trial court in refusing to admit it in evidence violated the full-faith-and-credit clause of the Constitution of the United States (Sec. 1, art. 4), and that therefore this court has jurisdiction of the appeal. *Held*, that the sole question at issue is whether a shipper of an interstate shipment, who has sued a connecting carrier for damages to the shipment occurring on its line and suffered judgment to go against him, is estopped by such judgment from prosecuting a suit against the initial carrier for the same damages, and that the solution of that question does not involve "the construction of the Constitution of the United States or of this State," and therefore this court does not have jurisdiction.

Corpus Juris-Cyc. References: Courts, 15 C. J., Section 512, p. 1082, n. 66.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris,* Judge.

TRANSFERRED TO KANSAS CITY COURT OF APPEALS.

*McBaine & Clark* and *Paul M. Peterson* for appellant; *Homer Hall,* of counsel.

*Ruby M. Hulen* for respondents.

RAGLAND, P. J.—This is an action against a carrier for damages alleged to have resulted from the negligent transportation of a car of live stock. On April 8, 1920, plaintiffs delivered to defendant, and the latter accepted, at Brown's, a station on defendant's line in Boone County, Missouri, a car load of horses and mules for transportation to Canton, in the State of Mississippi. A contract covering the carriage was duly executed by plaintiffs and defendant, and the transportation thereunder was begun. When Centralia, another station on defendant's line in Boone County, was reached, the defendant notified plaintiffs that it could not proceed further with the shipment because of a threatened strike, and offered to return the horses and mules to Brown's and redeliver them to plaintiffs. Plaintiffs advised that they would not receive them. They were thereupon unloaded at Centralia and put in a barn where they were kept by the defendant for a considerable length of time. Subsequently they were reloaded and carried by defendant to National Stock Yards, Illinois, and there turned over to the Chicago, Burlington & Quincy Railroad Company, a connecting carrier. The latter moved the shipment to Paducah, Kentucky, and there delivered it to the Illinois Central Railway Company, which completed the transportation.

At Centralia while the horses and mules were being removed from defendant's stock pen, into which they had been unloaded, to the barn where they were to be kept until the transportation could be continued, a num-

ber escaped, running through the streets of Centralia and out on to a highway leading into the country. In an effort to overtake and recapture them they were followed in an automobile, which frightened them and caused them to run on all the harder, some of them running into wire fences. The weather at the time was cold and damp and the roads were muddy and sloppy with snow. When the horses were finally corralled they were hot and exhausted. When the shipment reached Canton, Mississippi, some weeks later two of them were missing, one was down in the car in a dying condition and the others were emaciated, bruised and lame. The freight on the shipment and the charges for care and handling amounted to $602. This plaintiffs declined to pay, and as the Illinois Central Railway Company would not make delivery until the freight and charges were paid they instituted a suit in replevin in the Circuit Court of Madison County, Mississippi, to recover possession of such of the animals as had reached destination and were still on foot. The declaration in that suit was in five counts. In the first count it was alleged:

"When plaintiffs requested of the defendant the delivery of said stock . . . to them at Canton, Mississippi, the agent of the defendant . . . refused to deliver to these plaintiffs the said stock but unlawfully detained the same, although they knew that the same belonged to these plaintiffs, and that these plaintiffs were entitled to the immediate possession of the same. But wilfully and unlawfully detained the same and withheld the same from these plaintiffs and demanded that these plaintiffs should pay to said defendant, before delivery would be made, $602.46, which defendant claims as charges due on said stock for transportation, etc., which your plaintiffs charge was unreasonable, extortionate and not collectible, because it was not due to the defendant or to any connecting carrier over which plaintiffs' said stock was shipped or to any other person, firm or corporation with whom defendant was connected, or for whom defendant claims said charges. And further, plaintiffs

had sustained damages to said stock in transit, due to the gross carelessness and negligence of the defendant, in the handling of said stock in transit, whereby said stock was damaged $1,170, which plaintiffs claim was due to wilful, gross, wanton carelessness of the defendant and those for whom the defendant claims said charges, while the same were in transit, . . . which damage plaintiffs claim by way of recoupment to the demands of the defendant in this cause, greatly offset the same. Wherefore plaintiffs charge that said defendant wrongfully deprived plaintiffs of possession of said stock and detained the same from the plaintiffs and thereby compelled plaintiffs, in order to get possession of said property, to sue out a writ of replevin in this behalf, to recover this property and damages for the wrongful detention thereof, plaintiffs bring this suit and ask judgment for the retention of said property and in addition damages $1,500.''

The remaining counts merely varied the form of statement to meet possible conditions of the proof. The plea of defendant, Illinois Central Railway Company, tendered the general issue. On January 15, 1921, a trial of the cause was had, resulting in a verdict and judgment for the defendant therein.

The instant suit was commenced in the Circuit Court of Boone County, Missouri, on the third day of March, 1922. Subsequently the case was transferred to the Circuit Court of Callaway County on change of venue. The negligence charged in the petition was the permitting of the horses to escape from the stock pen in Centralia, the use of automobiles for their recapture, the failure to provide sufficient and wholesome food and water and want of care "in the handling of said shipment . . . while in transit from said station of Brown's to Canton, Mississippi.'' Defendant in its answer set up the judgment of the Circuit Court of Madison County, Mississippi, in the case of Brown and Rimmer v. Illinois Central Railway Company, heretofore referred to, and averred that by reason of that judgment plaintiffs were ''estopped

to recover from defendant for any damage that was caused by the Illinois Central Railway Company.'' On the trial of the cause defendant offered in evidence a properly authenticated transcript of the record of the judgment and proceedings had in the Mississippi court. Plaintiffs objected to its reception. Their objection as voiced by their counsel was as follows:

''I object to the introduction of the record in that suit for the reason that it constitutes no defense whatever to the action now. The defendant was not a party, either plaintiff or defendant, to that suit; no service was had on it, and the record in that case is wholly incompetent, irrelevant and immaterial to any purpose in this case.''

The objection was sustained by the court. Under instructions given for plaintiffs the jury were authorized to award damages for negligence and carelessness in the handling and care of the live stock while in transit ''between Brown's Station in Boone County, Missouri, and Canton Station in Mississippi.'' The jury found for plaintiffs and assessed their damages at $1,000. From the judgment rendered in accordance therewith defendant prosecutes this appeal.

A number of the rulings of the trial court are complained of, but the one mainly relied upon for a reversal is the one which excluded from the evidnce the record of the judgment of the Mississippi court. That ruling also furnishes the supposed ground of our jurisdiction of this appeal. It is claimed by appellant that it was in violation of the full-faith-and-credit clause of the Constitution of the United States. [Sec. 1, Art. IV., Const.]

The positions taken in this court by appellant and respondents, respectively, as to the admissibility of the Mississippi judgment in evidence in this case are fully disclosed by the following excerpts from their briefs.

Appellant's:

''Respondents take the position that the Mississippi judgment is not *res adjudicata* as to damages

caused by the Illinois Central Railway Company. For the convenience of the shipper the Carmack Amendment gives him the right to sue the initial carrier in interstate shipments for damages caused by a connecting carrier. Connecting carriers are often far removed from the point of shipment and where the damage is caused by a connecting carrier it was found impracticable in many cases for the shipper to bring suit. For this reason the Federal Act made the initial carrier liable for the acts of the connecting carrier. The act further provides that a judgment against the initial carrier shall entitle the initial carrier to recover the amount thereof from the connecting carrier (Act of June 29, 1906; 34 U. S. Statutes at Large, 595, Chap. 3591, sec. 7; 41 U. S. Statutes at Large, 494, Chap. 91, sec. 436).

"The shipper yet has his right to sue the connecting carrier causing his injury. At his option under the Federal Act he may sue either the initial carrier for the acts of the connecting carrier or the connecting carrier. The initial carrier is made the representative of the connecting carrier in case suit is filed against it and stands responsible for the acts of the connecting carrier in such suit. It is the privy of the connecting carrier.

"Respondents do not question the validity of the Mississippi judgment, but take the position that under the Federal Act they may prosecute this action against the Wabash Railway Company (the initial carrier) to recover damages caused by the Illinois Central regardless of the fact that another suit had been prosecuted to final determination against that company."

Respondents':

"Appellant's argument under Point 1 of his brief appears to be based upon the theory that by some manner of legal deduction, appellant is bound by the record and judgment of a case it was never a party to, had no notice of, and therefore has been deprived of its right 'without its day in court.' . . .

"Now, the appellant take the position that the right which they had, to hold the connecting carrier, to-wit, the Illinois Central Railway Co., liable for any part of the injuries of the shipment in question, which they might be able to show was due to the act of the Illinois Central Railway Co., has been lost by reason of the judgment in favor of the Illinois Central Railway Co.  .  .  .

"Applying the law as heretofore stated, to the case at bar, did the trial court err in excluding the judgment of the case against the Illinois Central Railway Company, in support of appellant's plea of *res adjudicata?* We think not. It is obvious the parties were not the same; neither does the appellant here stand in the relation of being in privy with the Illinois Central Railway Company, that is, in privy in a precise legal sense, such as will meet the ends of law; appellant is not a privy either in blood, representation, estate or law with the Illinois Central Railway Co., as such privy is defined in the books."

The ground upon which the judgment was excluded by the trial court was that the defendant was not a party to the suit in which it was rendered. Neither in the trial court nor in this court has the validity, efficacy or conclusiveness of the Mississippi judgment been questioned on the ground that it is the judgment of another jurisdiction. The sole question at issue is whether a shipper of an interstate shipment who has sued a connecting carrier for damages to the shipment occurring on its line and suffered judgment to go against him is estopped by such judgment from prosecuting a suit against the initial carrier for the same damages. The solution of that question does not involve "the construction of the Constitution of the United States or of this State." [Zack v. Fidelity & Casuality Co., 257 S. W. 124. See also Wolf v. Hartford Fire Ins. Co., 263 S. W. 846.]

We are therefore without jurisdiction; the cause is transferred to the Kansas City Court of Appeals. All concur.